IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDREW B. DAVIS,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          Civil Action No. 3:13CV586-HEH
                                    )
WELLS FARGO BANK, N.A., *et al.*,   )
                                    )
            Defendants.             )

## MEMORANDUM OPINION
### (Granting Defendants' Motion to Dismiss)

THIS MATTER is before the Court on Defendants' Motion to Dismiss (ECF No. 9) ("Motion") and accompanying Memorandum in Support (ECF No. 10) ("Memorandum"), filed on October 14, 2013.[1] Plaintiff was granted an extension of time until November 18, 2013, to file a response to Defendants' Motion, but has failed to do so. For the following reasons, Defendants' Motion will be granted as to all counts contained in Plaintiff's Complaint (ECF No. 3).

## I.    BACKGROUND

On September 18, 1998, Andrew B. Davis ("Plaintiff") obtained a mortgage in connection with the purchase of real property located at 3040 Oakley Points Terrace, Richmond, Virginia (the "Property"). Plaintiff executed a Note in the amount of $124,745.00 with Charter One Mortgage Corporation ("Charter One") as lender. (Compl. Ex. H) Plaintiff then executed a Deed of Trust as a security interest. (Compl.

---

[1] Defendants' Motion contains a *Roseboro* Notice, as required by Local Rule 7(K).

Ex. H1)  The Note was subsequently transferred to Norwest Mortgage, Inc. (*See* Compl. ¶ 27.)

On May 8, 2013, Plaintiff received a Appointment of Substitute Trustee Notice from Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). (Compl. Ex. J.)  On or about June 11, 2013, Plaintiff received a Notice of Foreclosure Sale (the "Notice") from BWW Law Group, LLC ("BWW").  (Compl. ¶ 7)  The Notice stated that, pursuant to the Deed of Trust between Plaintiff and Charter One, the Property would be offered for sale at a public auction on June 28, 2013.  (Compl. Ex. A)  On June 27, in response to the Notice, Plaintiff sent a "Qualified Written Request" ("QWR") via facsimile to BWW.  (Compl. ¶ 8)  At the foreclosure sale on June 28, Plaintiff presented the same QWR to "the Authorized Representative from BWW."  (Compl. ¶ 10)  The representative conferred via telephone "with someone from the office of BWW," and then notified Plaintiff that the foreclosure sale would proceed.  (Compl. ¶ 12)  The auction resumed and the Property was sold.  (Compl. ¶ 13)

On August 29, Plaintiff filed his Complaint with this Court to challenge the Defendants' actions in connection with the foreclosure sale.  Liberally construed, the Complaint asserts seven claims against the Defendants:  (1) violation of the Seventh Amendment to the U.S. Constitution; (2) violations of 12 U.S.C. § 92a(a) and Code of Virginia §§ 55-66.3 and 55-66.6; (3) violation of 12 C.F.R. § 226.23; (4) violations of various provisions of the Fair Debt Collection Practices Act, including 15 U.S.C. §§ 1601, 1692, and 1693; (5) common law fraud by omission or concealment; (6) unlawful notarization and alteration of a deed of trust and a promissory note; and (7) a declaratory

judgment to void the foreclosure sale. On October 14, the Defendants moved this Court

to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only

'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual

allegations," but must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the

"[f]actual allegations must be enough to raise a right to relief above the speculative

level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than

merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded

allegations are taken as true, and the complaint is viewed in the light most favorable to

the plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836,

841 (4th Cir. 2004) (citation omitted). However, legal conclusions enjoy no such

deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although courts are not required to "conjure up questions never squarely

presented to them . . . [or] construct full blown claims from sentence fragments,"

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *pro se* complaints

must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However "inartfully pleaded," *pro se*

complaints must be held to less stringent standards than those drafted by skilled lawyers.

*Id.*

## III.   ANALYSIS

Employing the standard of review presented and allowing the *pro se* Plaintiff

broad latitude in the construction of his Complaint, the Court will address each Count

individually.

### A. Seventh Amendment (Count I)[2]

Count I alleges that Defendants violated the United States Constitution.

Specifically citing the Seventh Amendment, Plaintiff argues that Defendants were

required to "afford[] the Plaintiff a trial by jury" prior to foreclosing on the Property.

(Compl. ¶ 15.) This argument, however, is inconsistent with Virginia's statutory

framework. Section 55-59(7) of the Code of Virginia sets forth the requirements for non-

judicial foreclosure and provides that in the event of default, the trustee may declare all

the debts secured by the deed of trust due and "' may take possession of the property and

proceed to sell the same at auction' without any need to first seek a court decree."

*Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 623 n.3 (4th Cir. 2011) (quoting  Va.

Code. Ann. § 55-59(7)). Plaintiff's argument is contrary to Virginia's well-established

---

[2] The Court retains the numbering originally used by Plaintiff in his Complaint and
subsequently followed by Defendants in their Memorandum, even though the Complaint
includes duplicate Count IVs and skips from Count V to Count IX.

non-judicial foreclosure scheme. Davis had no right to a trial before the foreclosure, and therefore, Count I fails to state a claim upon which relief can be granted and cannot go forward.[3]

### B. 12 U.S.C. § 92a(a) (Count II)

Count II contains two allegations of wrongdoing. First, Plaintiff asserts that Defendants violated their duty to properly record a certificate of satisfaction with the Clerk upon the transfer of the Note in accordance with Code of Virginia sections 55-66.3 and 55-66.6. (Compl. ¶¶ 21-22.) Second, Plaintiff argues that, by virtue of Defendants' violations of the Code of Virginia, Defendants also violated 12 U.S.C. § 92a(a). (*Id.*)

The Code of Virginia provisions cited by the Plaintiff govern the *release* of deeds rather than the *transfer* of deeds. The Plaintiff contends that the Defendants had an on-going duty to ensure that information about the Deed of Trust was registered with the Clerk of Court, including a duty to record a Certificate of Satisfaction when the Note was purchased. However, the purchase of the Note does not constitute the release of the Note's obligations, but rather a transfer of the rights and obligations under the Note. Plainly, the Code of Virginia sections quoted by the Plaintiff do not impose a duty to record with the clerk each time a note is transferred. *See* Va. Code Ann. §§ 55-66.3, 55-66.6. Plaintiff goes on to aver that he did not know "to whom the mortgage is to be paid since there has never been a certificate of satisfaction filed . . . ." (Compl. ¶ 23.) This

---

[3] Count I also contains allegations of error by Defendants for proceeding with the foreclosure sale after the QWR was filed. The Court construes these allegations to be supportive of Count IV (first) and Count IV (second), and accordingly will be addressed *infra*.

（）

argument falls by its own contradiction: a certificate of satisfaction is only filed once the note has been paid and serves as a release of the encumbrance, but does not function as an indication of where to direct a payment on a note. Thus, Plaintiff's claim fails.

The Code of Virginia does contain provisions with language relevant to Plaintiff's allegations, but the language of Section 55-66.01 still provides no relief for the Plaintiff. The Code provides that "[w]henever a debt or other obligation secured by a deed of trust, mortgage or vendor's lien on real estate has been assigned, the assignor or the assignee, *at its option*, may cause the instrument of assignment to be recorded . . . . Nothing in this statute shall imply that recordation of the instrument of assignment or a certificate of transfer is necessary in order to transfer to an assignee the benefit of the security . . . ." Thus, contrary to Plaintiff's position, neither Charter One nor Norwest Mortgage was obligated to record the transfer of the Note. As such, this particular claim fails even when viewed under a more appropriate Code provision.

Plaintiff asserts that Defendants' alleged violation of the Code of Virginia provisions also places them in violation of 12 U.S.C. § 92a(a). Notwithstanding the fact that the underlying provisions of the Code of Virginia provide no shelter for the Plaintiff, his claim under § 92a(a) nonetheless fails because no private right of action is available. Section 92a(a) limits the authority of the Comptroller of Currency to authorize national banks to act as fiduciaries when not in contravention of state law. This provision was enacted to provide competitive equality between national banks and state banks in the provision of banking and trust services in the respective states. *See Am. Trust Co., Inc. v. S. Carolina State Bd. of Bank Control*, 381 F. Supp. 313, 323 (D.S.C. 1974) (citations

omitted). The statute, however, does not present a private right of action for alleged failures by bank fiduciaries during the course of providing services as Plaintiff suggests. There is no plausible claim under the Virginia or federal statutes relied upon by the Plaintiff in Count II.

### C. 12 C.F.R. § 226.23 (Count III)

Count III alleges that Defendants violated 12 C.F.R. § 226.23 by failing to provide full disclosure of the lender's identity. Specifically, he claims that Defendants lead him to believe that Charter One was the actual lender, rather than Norwest, and this alleged misinformation caused the Plaintiff to make payments to the wrong lender. He further claims that the transfer of the Note from Charter One "zeroed" his original underlying debt and relieved his obligation to repay.

The regulations promulgated in 12 C.F.R. § 226.23 under the Truth in Lending Act provide for the rescission of certain agreements. The right of the consumer to rescind, however, is explicitly prohibited for residential mortgage transactions. 12 C.F.R. § 226.23(f)(1). Therefore, Plaintiff's pursuit of rescission fails.

Notwithstanding Plaintiff's misapplication of 12 C.F.R. § 226.23 for a right of rescission, his additional allegations under this Count also fail to state a claim upon which the Court can grant relief. Plaintiff asserts that he was never aware that the Note would be transferred, that the lack of disclosure renders the contract unconscionable, and that the transfer renders the debt relieved. However, under the Truth in Lending Act, or any other pertinent authority, no duty of disclosure is imposed on the Defendants.

While the Plaintiff recognizes in the Complaint that his Note qualifies as a negotiable instrument (*see* Compl. ¶ 29), he fails to recognize the nature of negotiable instruments and the broad transferability of Notes that qualify as such. "[Virginia] has ensured that notes remain easy to transfer . . . . [and] the recipient of an instrument obtains whatever rights the transferor had . . . amount[ing] to plenary power to enforce the instrument." *Horvath*, 641 F.3d at 621 (citation omitted). The transfer of this Note, routine in the mortgage market, neither renders the Note unconscionable nor relieves the Plaintiff's debt obligations. Therefore, Count III cannot go forward.

Contrary to Plaintiff's assertion, neither the Truth in Lending Act, Defendant's supposed duty of disclosure, nor the transfer of the Note provide Plaintiff with any possible relief, and therefore Count III cannot proceed and will be dismissed.

### D. Fair Debt Collection Practices Act (Count IV (first))

Next, Plaintiff claims that Defendants violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), including 15 U.S.C. §§ 1601, 1692, and 1693. Plaintiff alleges that "[p]ursuant to the FDCPA, once a CEASE and DESIST of any kind, including a QWR has been submitted, any and all collection activity, in any and every form, must cease until 'such verification' is provided." (Compl. ¶ 33) Thus, Plaintiff believes that Defendant violated the FDCPA by neither "provid[ing] ALL of the requested information nor . . . ceas[ing] their collection activities after receiving the QWR." (*Id.*)

The FDCPA clearly defines "debt collector," and under the statute, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due

another to the extent such activity . . . is incidental to a bona fide fiduciary obligation" is

exempt from liability. 15 U.S.C. § 1692a(6)(F)(i). Accordingly, "creditors, mortgagors,

and mortgage servicing companies are not debt collectors and are statutorily exempt from

liability under the FDCPA." *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 648 (E.D.

Va. 2010) (quoting *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 718

(E.D. Va. 2003), *aff'd*, 67 Fed. App'x 238 (4th Cir. 2003)). In this case, Defendant Wells

Fargo is the holder of the Note and a mortgage servicing company, and thus it is exempt

from liability under the FDCPA.

With respect to Defendant BWW, "the Fourth Circuit has held that a trustee acting

in connection with a foreclosure *can* be a 'debt collector' under the FDCPA." *Blick v.

Wells Fargo Bank, N.A.*, No. 3:11-cv-00081, 2012 U.S. Dist. LEXIS 41266, at *25 (W.D.

Va. Mar. 27, 2012) (citing *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378-80

(4th Cir. 2006)), *aff'd*, 475 Fed. App'x 852 (4th Cir. 2012). Whether BWW is a non-

exempt debt collector generally depends on whether BWW can be said to "regularly"

engage in consumer-debt-collection activity. *See id.* At this stage, the Court does not

have enough information to make such a determination.

Assuming without deciding that BWW "regularly" engages in consumer-debt-

collection activity, Plaintiff nonetheless fails to state a claim because the Complaint does

not sufficiently allege that BWW's Notice was an attempt to collect a debt. In

determining whether a person attempts to collect a debt, the court looks at the nature and

content of the communication. In *Wilson*, the Fourth Circuit decided that a law firm's

letters to a debtor was an attempt to collect debt because the law firm's correspondence

9

"contained clear references to the [FDCPA], including the notice 'this is an attempt to collect a debt.'" 443 F.3d at 379.  In *Blick*, the court held that a law firm did not make an attempt to collect debt on the grounds that

> [The law firm] neither made an express demand for payment nor provided Plaintiffs with any information regarding who was claiming current ownership of the debt or how the debt could be satisfied.  On the contrary, [the law firm's] notice to Plaintiffs merely informed Plaintiffs that a foreclosure sale would proceed 14 days from the date of the letter's mailing, and alerted Plaintiffs that they could petition the circuit court if they believed they may be subject to a claim by a person other than the Beneficiary to enforce the note and the deed of trust.

2012 U.S. Dist. LEXIS 41266, at *27.

In distinguishing *Blick* from *Wilson*, the court emphasized that "the notice in *Wilson* contained specific information about the debt, including the amount, the creditor to whom the debt was owed, a procedure for validating the debt, and to whom the debt should be paid." *Id.* Likewise, in *Blagogee v. Equity Trustees, LLC*, the court did not consider a trustee's correspondence to be an attempt to collect debt because "the [debtor] never received an express demand for payment, notice of the person to whom their debt should be paid, or a statement indicating that [the defendant] was attempting to collect a debt." No. 1:10-CV-13, 2010 U.S. Dist. LEXIS 114233, at *16 (E.D. Va. July 26, 2010). Similar to these cases, it is clear that BWW's Notice was not an attempt to collect debt.[4] Like the letters sent to the debtors in *Blick* and *Blagogee*, the Notice from BWW to

---

[4] This Court notes that the top of the BWW Notice contains a disclaimer that states, "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR." (Compl. Ex. A.) In both *Wilson* and *Blagogee*, the top of each letter at issue contained a disclaimer that was identical to the one in the present case. Such disclaimer, however, was not dispositive in either *Wilson* or *Blagogee*; rather, both courts focused on the content of the letters.

Plaintiff did not make an express demand for payment, did not provide notice of the person to whom the debt should be paid, did not indicate how the debt could be satisfied, and did not indicate that the firm was attempting to collect a debt. (*See* Compl. Ex. A.) Rather, like the correspondence in *Blick*, the BWW Notice merely informed Plaintiff of the date and time of the foreclosure sale. (*Id.*) Because this Notice is not an attempt to collect debt, Plaintiff has not sufficiently claimed a violation of 15 U.S.C. § 1692c(a) by BWW. Therefore, without Wells Fargo or BWW qualifying as a debt collector, the alleged FDCPA violations following the QWR do not sufficiently state a claim.

Plaintiff cites additional statutes under this Count which similarly provide no relief and appear irrelevant to the allegations. To the extent that 15 U.S.C. § 1601 applies, 15 U.S.C. § 1601 is implemented by 12 C.F.R. § 226.23, which the Court previously addressed. Additionally, 15 U.S.C. § 1963 governs the electronic transfer of funds, and the Complaint does not mention electronic fund transfers. For these reasons, Plaintiff's claims under the first Count IV will be dismissed.

### E. Non-Disclosure or Concealment (Count IV (second))

Very liberally construed, Plaintiff's second Count IV appears to assert common law fraud. Like Plaintiff's first Count IV, the second Count IV hinges on Defendants' lack of response to Plaintiff's QWR prior to foreclosure. Although this same lack of response forms the basis for both claims, Count IV (second) differs in that Plaintiff explicitly alleges that Defendants' lack of response was a result of "the information requested . . . being concealed." (Compl. ¶ 37). The Complaint then provides a basic

11

definition of "Active Concealment," which describes the general circumstances in which active concealment constitutes fraud. (*Id.*)

Virginia recognizes "fraud by omission, sometimes called 'concealment[,]' where '[c]oncealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud.'" *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450 (1984)). Silence, however, "does not constitute concealment in the absence of a duty to disclose." *Id.* (citation omitted). Because Plaintiff's claim rests on Defendants' silence—Defendants' failure to respond to the QWR prior to foreclosure—Defendants' liability can only exist where Defendants had a duty to disclose the information requested by the QWR. As the Court previously stated in its discussion of the first Count IV, Defendants had no duty to respond to Plaintiff's QWR because Defendant Wells Fargo is exempt from the definition of "debt collector" under the FDCPA and Defendant BWW did not attempt to collect a debt when it sent Plaintiff the Notice. Because neither Defendant had a duty to disclose the information requested by Plaintiff's QWR, the Defendants' collective silence in response to the QWR does not constitute concealment by omission. Accordingly, Plaintiff again fails to state a claim.

### F. Unlawful Notarization and Alteration (Count V)

In Count V, Plaintiff contends that Defendants had a "duty to sign the Note ... in the presence of the Plaintiff to ensure that there were no unauthorized changes or modifications of any words or numbers . . . relating to the obligation of a party." (Compl.

¶ 42) Plaintiff further alleges that Defendants breached this duty and violated UCC § 3-407(a), "by signing and notarizing [the Promissory Note] not it [sic] the presence of the Plaintiff." (*Id.*) Additionally, Plaintiff claims that Defendants altered the Deed of Trust and Note after Plaintiff executed the two documents by applying the stamp stating, "Without Recourse Pay to the Order of Norwest Mortgage, Inc.," the signature of Darlene L. Waller, and the notarization of Katherine N. Kolia. (*Id.* ¶¶ 47-49)

UCC § 3-407(a), which governs negotiable instruments, defines "alteration" as either "(i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party." Assuming without deciding that the alleged changes were made, Plaintiff nonetheless fails to specify how the alleged changes modified his obligations in any respect. Plaintiff alleges that he was "lead to believe that he had a meeting of the minds with whom he believed to be Lender of the mortgage . . . only for it to have been revealed . . . that he had been paying for a mortgage that had already been paid in full." (Compl. ¶ 51) Simply put, Plaintiff's obligation was to make payments under the terms of the Note until his obligation was either satisfied or discharged. Plaintiff has not, and cannot, reasonably argue that the alleged added stamp, signature, or notarization modified his obligation to pay.

Plaintiff then alleges that the Deed of Trust and the Note were improperly notarized. The Virginia Code does not require the notarization of deeds. Even if the

13

notarization was improper, absent a requirement that deeds be notarized, the Court cannot void a deed on such grounds. As a result, Plaintiff's claim fails.

### G. Declaratory Judgment (Count IX)

Plaintiff's final claim asks the Court to declare the foreclosure as void. The Property in this case was foreclosed on June 28, 2013. (Compl. ¶ 13) Any wrong Plaintiff suffered as a result of the foreclosure has already occurred. "'[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation,' and are untimely if the questionable conduct has already occurred or damages have already accrued." *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (quoting *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008)). Because the Property was already foreclosed on June 28, 2013, any wrong suffered as a result of the allegedly deficient foreclosure has already occurred. As a result, a declaratory judgment at this stage is inappropriate.

## IV.    CONCLUSION

Based on the foregoing analysis, the Motion to Dismiss will be granted and all counts will be dismissed with prejudice. An appropriate Order will accompany this Memorandum Opinion.

/s/
_____
Henry E. Hudson
United States District Judge

Date: Jan. 8 2014
Richmond, VA

14